# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Caitlin E. Sgarlata being duly sworn, state as follows:

## Introduction and Agent Background

1. I am a Border Patrol Agent (BPA) of the United States Border Patrol (USBP), a component of Customs and Border Protection (CBP) within the Department of Homeland Security (DHS). I have been so employed since May 21, 2018. I have been assigned to the Swanton, Vermont Border Patrol Station as a BPA for approximately 2 years and 6 months and serve as the station's prosecution agent. I was previously assigned to the Laredo, Texas Border Patrol Station as a BPA for approximately 4 years and 8 months.

2. This affidavit is offered to demonstrate that probable cause exists to believe that Victor AVILA, a citizen and national of the United States, was involved in t the attempted transportation of a Mexican national in furtherance of his illegal entry, while knowingly or recklessly disregarding the fact that the individual was an alien who had illegally entered the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

3. This information contained in this affidavit is based on my training and experience, review of law enforcement and immigration records, my own investigation, and information I have received from other law enforcement involved in the investigation. This affidavit is submitted for the limited purpose of securing a criminal complaint because there is probable cause to believe that Victor AVILA committed the foregoing offense. As such, this affidavit does not set forth all facts that I know from my investigation into this matter. Unless otherwise specified, the statements described herein are related in sum and substance and are not intended as direct quotations.

## Probable Cause

4. On August 12, 2025, at approximately 10:25 a.m., Swanton Sector Dispatch notified BPAs of the Swanton Station of a black Sport Utility Vehicle (SUV) on a live feed camera near the United States- Canada international border near the area I know based on my training and experience to be referred to as the Blair Road live feed camera in the vicinity of Blair Road, in the town of Alburg, Vermont. Swanton Sector Dispatch notified BPAs that there was a single adult male traveling southbound from Canada into the United States on the live feed camera. Swanton Sector Dispatch then advised of a camera activation showing a single male subject with black hair, a black sweatshirt and grey sweatpants with glasses walking southbound. The subject was seen on the live feed camera crossing the international boundary, jogging to the SUV, opening the front passenger side and getting into the SUV. The SUV proceeded west down Leduc Drive before turning around, coming back east, and then proceeding southbound down Blair Road. The SUV was a black Buick bearing a white license plate. There is a designated port of entry, i.e., a place designated for entry into the United States by the Secretary of Homeland Security, approximately 0.25 miles west from this location (the Alburgh Port of Entry) and another designated port of entry approximately 4 miles east of this location (the Alburg Springs Port of Entry).

5. Based on my training and experience, I know that this area is a frequently used path for people attempting to cross illegally into the United States from Canada. Swanton Station has encountered multiple "load ups" at this area in the past. There are concrete blocks in place at the intersection of Blair Road and Leduc Drive (in the United States) barring vehicle entry from Canada along Chemin de la 4 Concession (in Canada), which previously continued onto Blair Road. United States and Canadian monuments, as well as signs advising there is an international

boundary, are evident on both sides of the international border near the concrete blocks.

6. BPA Reilly Donahue responded to intercept the vehicle detected on the live feed camera. When BPA Donahue was driving northbound on Blair Road, he passed a black Buick SUV matching the description of the vehicle in question. The vehicle bore a white plate later identified as South Carolina WRW644. The vehicle was later determined to be a rental from EAN Holdings. BPA Donahue turned around and attempted to locate the vehicle. The Buick had sped off down the road and turned right (west) onto Rt 2 in Alburg, VT toward Rouses Point, New York. BPA Donahue followed the vehicle to the Rouses Point Bridge. BPA Donahue located a safe spot once off the bridge to activate his emergency equipment to initiate a vehicle stop. BPA Donahue approached the vehicle and identified himself as a United States Border Patrol Agent and began questioning the two occupants later identified as Victor AVILA and Danny Alvarez-MORALES as to their travel and status in the United States. Victor AVILA, the driver, claimed to be a United States citizen and provided a United States passport. Danny Alvarez-MORALES, the passenger, claimed to be a citizen of Mexico with no legal status to be or remain in the United States. Alvarez-MORALES admitted to crossing the border illegally. BPAs took AVILA and Alvarez-MORALES back to Swanton Border Patrol Station for further processing.

7. Below is a map of the area described above. The thick yellow line indicates the United States and Canada border. The blue star indicates where the camera activations took place and where Alvarez-MORALES crossed the international boundary illegally. The red line indicates the route of travel taken by AVILA and Alvarez-MORALES. The white circle indicates the closest Port of Entry.



8. At the Swanton Border Patrol Station, BPAs took AVILA and Alvarez-MORALES' fingerprints and biographical information and entered them into law enforcement and immigration databases. Records from these databases showed that Alvarez-MORALES had no prior immigration history and no prior criminal history. AVILA's records checks revealed multiple arrests to include aggravated assault with a deadly weapon, multiple DUI's, solicitation for prostitution, and battery.

9. In an interview at the Swanton Border Patrol Station, AVILA was read his Miranda Rights in the Spanish language, and he was asked if he would like to speak about his affiliation with Alvarez-MORALES. AVILA agreed and signed an advisement of his rights. AVILA claimed he was comfortable conducting the interview in the English language and was advised if

4

there was anything he did not understand that he was able to ask us to translate it into Spanish. Border Patrol Agent Intel Specialist (BPA-I) Jamie Montoya and I conducted an interview of AVILA. AVILA avoided answering questions directly about his involvement in the smuggling of Alvarez-MORALES. AVILA claimed he was just coming here to meet a friend and that he wanted to go back home and Alvarez-MORALES never asked him to take him anywhere. AVILA claimed he knew Alvarez-MORALES was without the proper documentation to be in the United States legally. AVILA claimed he did not know that Alvarez-MORALES crossed the international boundary into the United States illegally.

10. BPA-I Montoya and I requested permission to search AVILA's cellular telephone as we believed there was pertinent information regarding his involvement in Alvarez-MORALES' illegal crossing into the United States. AVILA granted us permission to look at his phone by signing a consent to search form and providing us with his passcode. During our search, we were able to see direct communication between AVILA and Alvarez-MORALES regarding their plans on where to meet, what car was rented for the event, and how much was to be paid. There was a monetary gain of $1,000.00 to AVILA through Zelle. The agreed upon amount for the entire smuggling event was to be $2,000.00 in total. The remaining $1,000.00 was to be paid to AVILA once he dropped Alvarez-MORALES off in Nashville, Tennessee. After providing AVILA all of the collected information off of his phone, he subsequently admitted to his involvement in the smuggling of Alvarez-MORALES.

**Conclusion and Request**

11. Based on the foregoing, I submit there is probable cause to believe that on or about August 12, 2025, in the District of Vermont, Victor AVILA was involved in the attempted transportation of a Mexican national in furtherance of his illegal entry, while knowingly or

recklessly disregarding the fact that the individual was an alien who had illegally entered the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

                                                  Caitlin E, Sgarlata
                                                  Border Patrol Agent
                                                  U.S. Border Patrol

Attested and sworn to me via reliable electronic means under Federal Rule of Criminal Procedure 4.1(b)(2)(A), specifically, video call, in Burlington, Vermont, on this 13th day of August 2025.

                                                  HONORABLE KEVIN J. DOYLE
                                                  UNITED STATES MAGISTRATE JUDGE